United States v. Gary Boyle, which is Appeal No. 21-1093. Mr. Wesserman? May I remove this? Yes, please. Thank you. Good morning, Your Honors. I want to thank you for this opportunity. The last time I was here was 2013 with another de facto life sentence case, Patrick. I look around the room. Mr. Keenstrom, nice to meet you. Looking around at the lawyers, I'm wondering if I'm too old for this. My goal today is to persuade this court to agree that there were three errors made by the district court. The government's position is really, why are we here? It was a horrible crime. He was a horrible person. The district court judge only needed six pages in the transcript to impose what is, in essence, a 90-year sentence. Trial counsel didn't really disagree with the sentence, didn't really disagree with the guidelines calculation, so why are we here? We're here because the errors that were committed, in my view, are clear and substantial, and if they were to be corrected, would actually make a difference. The first error that I think is significant, and I'll pull up the transcript of that, has to do with the district court's misunderstanding of the course of conduct in the federal case. Page 29 of the sentencing transcript, district court says, the conduct occurred on February 4, 2019, and February 21, 2019, February 4 being counts 1 through 7, February 21 being count 8, noting in the next sentence he, Mr. Boyle, was arrested on March 22. Looking in the pre-sentence report, which is where the facts are that the district court has to rely on, I mean, there may be others, but they're not part of the record. Looking in the pre-sentence report, what happened was that on February 19 of 2019, some agent in Department of Homeland Security, according to the pre-sentence report, reported that LFD, that was a chat group in Kik, a user group, was transferring child pornography on February 3rd and February 4th of 2019. It's right out of the pre-sentence report. Noting that on February 4, four images and three videos, all, according to paragraph 16 in the PSR, were with the same child victim. On February 20th, they figure out that the, agents figure out that the IP address was associated with the Boyle residence. In the PSR, it's actually the wife, but they quickly figured out that they were, it was being used by the defendant, Gary Boyle. That very day, perhaps the next day, the 21st, a federal search warrant signed and executed. Boyle's cell phone and Boyle were seized.  This is where I think the district court made an erroneous finding. It's true that the phone was seized on the 21st, but you cannot look anywhere in the facts of the case and determine when the photographs found on that phone, we don't have the metadata, whatever it is that you would look at to make that determination. It's not part of the record of the case. It might be in the discovery someplace, but it never came before the judge who sentenced Mr. Boyle. So the images were found on the 21st. If that means that's when it gets charged, that may be, but that doesn't mean that's when it occurred. Can I, just in the interest of our time, I'm not sure the point you're making with it, because what's running through my mind is this. Didn't Mr. Boyle plead guilty? He did, both in state and federal court. Right, so in federal court, when he pled guilty, what was it, an eight-count indictment, I think, right? Yes. Okay. So what difference does any of this business with time make? Well, because the judge structured his sentence because he thought he had different courses of conduct. That's the problem, and that's what I was about to get to. Okay, so what I understood is that on February 4th, Mr. Boyle committed anew, and as you acknowledge, heinous act with the victim, but that he had done so before. He had done so on dates before February 4th, indeed for a period of years. Let me help you out. The state court case charged him... Up until February 3rd. Exactly, from the date of birth of his daughter. I don't know why they do that in Illinois, but that's what they do, apparently, right up until February 3rd. There's no different conduct occurring here. It's parsed out by the state and the feds to be different. Did he plead guilty to new conduct on February 4th? Well, it's the same course of conduct is my point. Well, I don't know what you mean. You mean the same victim and the same type of conduct? Same victim, same defendant, same home, same telephone. Okay, fair enough. But on February 4th, it happens again. It's a new crime. That may be. I'm not disputing that it's a new crime. Every time you sexually assault someone, whether it be the same day, could be charged as a separate crime. There might be reasons not to do that, but I think maybe I haven't made my point clear. Well, could you address the government's point that, even if you are right more generally about the way crimes are charged and counted and treated as the same course of conduct, that Comment 5 to the relevant guideline, 2G 2.2, says that's not the rule in dealing with sexual exploitation of children? I confess I don't have the citation right in front of me. It's the relevant guideline provision that they say is the rebuttal to your argument. All right. If I may be permitted to just flesh out a little bit more what I think the error is for, I think the question will be answered. It will be answered a little differently. But, so, the district court then noted that on February 22nd, basically the day after he was arrested, that, I'm sorry, the exact date, state case was filed on February 28th. The indictment came down on March 6th. What we don't know, although it seems clear that it had to have occurred, was that there was some coordination between the state district attorney and our federal prosecutor. Because everything that Gary Boyle did could have been charged in state court. There's no crime that he committed that has a federal-only jurisdictional basis to it. So, obviously, somebody got together and said, let's do it this way. I think when you say that, I think, of course they did. Of course. But where's the, if there's a legal, your client's serving an awful lot of time. Ninety years. Ninety years. Okay, so if there's a legal error here that's been committed, what specifically is the legal error? It seems like we're talking about what fact pattern led us to today. I'm trying to focus for the benefit of Mr. Boyle here on whether a legal error was committed. Let me then, page 31 of the sentencing transcript is the error. 31, you say? Page 31. Okay. It's page appendix 112. District Court says count eight sets forth a completely different count. Well, that part is true. On a completely different day and completely different time period. No, it doesn't. That's not what happened. That's why I'm trying to stress that that's an erroneous finding of fact. It may not be a legal conclusion. I agree. But that's just not what happened. Because, remember, the phone was found on the 21st. It was seized pursuant to warrant on the 21st. But in terms of a completely different time period, even February 4 to February 21st of the same year would be an unusually short, completely different time period. But that's what the District Court found. But, in fact, we don't know that that's what happened. It's unlikely that, in fact, that's what happened. So next is when the District Court comes to the sentencing and dealing with the issue of the state court case. And this is now on page 32. District Court says, and there could be no question that the conduct in 19C of 300, the sexual predator conviction of a child under 13, that's not exactly what it was, but that's not critical, for which he received 40 years, was a separate course of conduct and, therefore, the 600 months imposed shall run consecutive to the Macon County case in 19C of 300. As alleged, it was the day before. It's exactly the same kind of conduct. Yes, there's the overlay of the images, but he'd been doing that all the way along, too, according to the pre-sentence report. The only difference, if you consider it to be a difference, is that what was produced in one case was video rather than simply a still photo. But all this occurs really within a, at most, 48-hour period in the same house with the same victim, with the same defendant, with the same telephone, with the same people watching, because, remember, this is all within the same group. I don't understand this at all. With all respect, I don't, because if you said, I committed a murder on February 3rd of a rival member of a gang, I then committed a second murder on February 4th of a different member of that rival gang, well, it's the same course of conduct. I was out to get rival gang members. There's no question I've committed two crimes and would be sentenced on those two crimes, even if one were prosecuted at the state level and another at the federal level. Well, I, when, I wrote what I... How is that any, how are we talking about anything different? Well, because when I wrote what I wrote, I was going off what the court said. It didn't say, it said it was a separate course of conduct. A course of conduct has a meaning to it. It doesn't necessarily mean what I think, Your Honor, you're indicating, simply two different crimes. It's a course of conduct. And this court, district court, said it was a separate course of conduct. I don't see how. That was why the district court made a 50-year sentence consecutive to a 40-year sentence because it believed it was a separate course of conduct. And I think that's erroneous. I mean, if it isn't, then Mr. Boyle does his 90 years. But again, the perception that I had from reading the sentencing transcript was that the district court determined, and he said so, the judge, that he was going to give Mr. Boyle a life sentence. Mr. Kinster is right about that. He clearly made that known, that that's what he wanted to do. But the problem is he misperceived, let me put it that way, if that's more palatable, two things that were critical. When Count 8 occurred, it was discovered on the 21st, but it happened at the very same time and at the very same place, with the very same phone, with the very same people, that counts 1 through 7. The state court case is the very same house, very same victim, same perpetrator, same modus, same activating motivation. It's all the same conduct, but it got parsed out into one state and one federal prosecution for which you wound up getting consecutive time, which wouldn't have happened maybe if the district court had perceived the underlying rationale of both prosecutions and the timing accurately, and I don't think he did. Thank you very much, Mr. Wasserman. Mr. Kinster for the United States. May it please the Court. Good morning, Your Honors. My name is Jeff Kinster, and I represent the United States. The district court made clear that the defendant deserved to spend the rest of his life in prison, and it imposed a sentence that achieved that result. No more was required to justify imposing consecutive sentences to the extent necessary to do so, and I think the district court made clear that it wasn't any particular courses of conduct, that it was the suffering that the defendant inflicted on the victim that was the reason for that. The district court noted that the defendant himself had imposed a life sentence on his victim, a lifetime of suffering and nightmares, and that the defendant deserved that same sentence. As the court pointedly put it in response to defense counsel's question, the answer was no, the defendant didn't deserve a chance to breathe the same fresh air that his victim would be breathing, and so the court went about then structuring a sentence that achieved that, and it did so by running the production counts consecutive to the possession counts and all of those consecutive to the state sentence. Really no more needed to be said. The district court didn't have to repeat its 3553A discussion again in imposing those consecutive sentences, having already explained at length once why a total sentence of life was the appropriate sentence. In any event, the district court was, I think, completely fair in characterizing the offenses as different courses of conduct. The offenses didn't involve the same conduct. The state offense involved only a single instance of the abuse itself. The federal offenses involved collecting, trading, and producing permanent images of abuse and exploitation. As this court has repeatedly acknowledged, that carries consequences for the victims well beyond the abuse itself and warrants additional punishment. Is it correct, Mr. Keenstra, that the images for which the defendant was convicted in federal court included some involving the same victim but not all? That's correct. I believe seven of the images included the same victim. Those are the ones that were taken on February 4th. The other 100-plus images were the ones found on the phone as well as potentially ones exchanged on the kick group. The state offense, we know that the abuse itself had begun three years earlier. I think this brings us around to 5G1.3 a bit, but the standard review in that context is plain error. I think one of the critical points about plain error is that the defendant bears the risk of an ambiguous record. What we're talking about here isn't offenses that took place on two consecutive days. It's offenses that took place three years apart. We know from the state charging document that the defendant was alleged to have committed the offense any time over an eight-year period leading up to the day before the federal offense. We know from the victim and I think Mr. Boyle's admissions that the abuse itself had begun about three years earlier. Because the defendant bears the risk of an ambiguous record on plain error review, what we're really talking about is offenses that occurred three years apart. Viewed in that light, I think certainly the guideline issue becomes very easy. These are separate courses of conduct for guidelines purposes and just the same for the purposes of the court's 3553A discussion. The other point I wanted to make on plain error review with 5G1.3 is that likewise the defendant bears the burden of showing that an error in fact occurred. To do so, he would have to show that the state offense qualified as relevant conduct under one of three specific subsections of 1B1.3. I think it's notable that the defendant's briefs never even actually cite 1B1.3. Having failed to ever engage with ethical legal standard, I think as a threshold matter, he's failed to show plain error that his state offense actually constituted relevant conduct in that respect. As to the criminal history score, the defendant has waived any objection. As you know, Judge Hamilton, there's no error in the first place. And regardless, his offense, his guideline range would be life in all six criminal history categories, so there's no error. Mr. Canestro, you suggested in your brief that this was a below-guideline sentence. That's correct. I have to say my eyebrows rose trying to understand what you meant and what consequence that might have given that we have a de facto life sentence here. That's correct, and I'm not trying to walk away from that. The district court was very clear that it intended to impose a life sentence and that it did so. I think really the salient points of the below-guideline sentence, one is that this court presumes reasonableness at 3553A. That's almost, in every case I've seen where we do that, we are saying the sentence is in fact below the guideline range, and here we seem to be talking about purely fictional differences. Right, so functionally it's within the guidelines, I would say. It is functionally a life sentence. The district court made no bones about that. It intended for the defendant to serve the rest of his life in prison. But I think it also illustrates another factor, which is that his offense conduct was so egregious that the fact that his actual sentence could be a below-guideline sentence and still produce this result illustrates the egregiousness of the offense that produced such a high guideline range in the first place. Were you present at the sentencing? I'm sorry. I was not. Oh, okay. I will just say I found extraordinary in this case that this girl was able to be present. And I've had to do some sentences like this, and that's a remarkable fact. I agree. Unless Your Honors have any questions, any other questions, the government would ask this court to affirm. Thank you very much, Mr. Keenstrom. Mr. Wasserman, your time expired, but if you need a moment for rebuttal, you're welcome to it. I acknowledge the doctrine, but I think there are times that plain error is sort of the last refuge. With regard to how the state court case within the guidelines was addressed at sentencing, in the pre-sentence report at paragraph 108, it forms the basis for the Chapter 4 enhancement. And if you look at the pre-sentence report, you see this throughout. Every enhancement, every supervised release, although I'm not terribly concerned he's ever going to get there, was another recitation of the state court conduct. It's on virtually every page of the pre-sentence report, and forms the basis for the guidelines that the government says, in essence, you can ignore because of the abhorrent nature of the crime. It's a hard case to argue. I acknowledge that. And as I said before, and I understand, Your Honors, but all I'm asking is, categorize these appropriately. February 21st is just the day they found the phone. The images are not a separate course of conduct. It's all the same. When I heard, I'll just take another couple seconds, when the government talks about the fact that it went back three years, that's exactly why it's the same course of conduct. You have to think about that a bit. A little bit of dissonance with that thought, but that's why it's the same course of conduct. It's why it didn't magically... We take your point. Thank you very much, Mr. Wasserman. Our thanks to both counsel. Mr. Wasserman, thank you for taking upon yourself this assignment on the request of the court. We appreciate your service to the court and to your client. Mr. Wall asked me, I was happy to help. Sorry? Mr. Wall asked me, I was happy to help. We appreciate it. Thank you very much.